UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-25762-BECERRA/TORRES

CRISTIAN CAMILO BLANCO ACOSTA
and SERGIO ARDILA ORTIZ,

  Plaintiffs,

vs.

JCRB INC. D/B/A BISTRO CAFÉ,
JAN KARLO RUIZ ORTIZ, and
TAMARA PEREZ FELICIANO,

  Defendants.
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs, Cristian Camilo Blanco Acosta and Sergio Ardila Ortiz, through their undersigned counsel, hereby file this Response in Opposition to Defendants JCRB Inc. d/b/a Bistro Café, Jan Karlo Ruiz Ortiz, and Tamara Perez Feliciano's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 19] (the "Motion"), and respectfully request that this Court deny the Motion in its entirety, as follows:

### I. INTRODUCTION

Plaintiffs filed this lawsuit as an Amended Complaint seeking recovery from Defendants for violations of the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FMWA"), and 26 U.S.C. § 7434. [ECF No. 12.] The Amended Complaint asserts five counts: Count I seeks damages under 26 U.S.C. § 7434 for willfully filing fraudulent tax information returns; Count II alleges FLSA tip violations stemming from Defendants' unlawful tip-sharing scheme; Count III asserts FLSA minimum wage violations; Count IV alleges FLSA overtime violations; and Count V

1

asserts FMWA minimum wage violations. Defendants responded with their Motion to Dismiss Plaintiffs' Amended Complaint, seeking dismissal of Counts I through IV but not challenging Count V. [ECF No. 19.]

Defendants' Motion misapplies the legal standards governing motions to dismiss and ignores the robust factual allegations in the Amended Complaint. As to Count I, Plaintiffs have properly alleged that Defendants willfully filed fraudulent W-2 forms overstating servers' income by including tips that servers were required to distribute to other employees, while understating the income of non-server employees who received those tips. The Amended Complaint details how JCRB processed and collected credit card tips through payroll, distributed them to servers, and then required servers to pay portions of those tips to bartenders, bussers, food runners, baristas, and kitchen staff—all while knowing that the information contained in the tax returns it filed was false, fraudulent, and inaccurate. As to Count II, Plaintiffs have adequately alleged FLSA tip violations by pleading that Defendants required servers to share tips with traditionally non-tipped employees as a condition of employment. As to Count III, Plaintiffs have plausibly alleged willfulness through specific factual allegations regarding Defendants' knowledge from prior FLSA litigation, their devising of a scheme to deprive employees of minimum wages, and their reckless disregard of FLSA requirements. As to Count IV, Plaintiffs have sufficiently alleged the amount and extent of overtime work to permit a just and reasonable inference of inadequate compensation.

Defendants seek dismissal based on hyper-technical pleading arguments that ignore the notice pleading standard and attempt to prematurely resolve factual disputes that are inappropriate at the motion to dismiss stage. As set forth in more detail below, Defendants' Motion must be denied in full.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

## II. RELEVANT FACTUAL BACKGROUND

For purposes of Defendants' Motion, the Court must accept all well-pled factual allegations in the Amended Complaint as true and draw all reasonable inferences in favor of Plaintiffs. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009)). The following allegations from the Amended Complaint must be accepted as true at this stage of the proceedings.

1.      Plaintiff Cristian Camilo Blanco Acosta ("Blanco") was employed by Defendants as a server at their restaurant, Bistro Café, from 2022 through November 7, 2024. [ECF No. 12 ¶ 5.]

2.      Plaintiff Sergio Ardila Ortiz ("Ortiz") was employed by Defendants as a busser/food runner at Bistro Café from March 2024 through November 2024. [ECF No. 12 ¶ 7.]

3.      Defendant JCRB Inc. ("JCRB") is a Florida for-profit company that operated its restaurant business under the fictitious name "Bistro Café" at 1352 Northeast 1st Avenue, Miami, Florida 33132. [ECF No. 12 ¶¶ 8-9.]

4.      Defendants Jan Karlo Ruiz Ortiz and Tamara Perez Feliciano were owners, officers, directors, and/or managers of Bistro Café who ran its day-to-day operations, were responsible for operational decisions, and were partially or totally responsible for paying Plaintiffs' wages. [ECF No. 12 ¶¶ 10-11.]

5.      JCRB allowed its customers to leave discretionary gratuities (tips) for its front-of-house employees, and most customers left those tips by credit card. [ECF No. 12 ¶ 18.]

6.      JCRB's practice was to process and collect all credit card tips that customers left for each server and to then distribute/pay the tips to the server through payroll. [ECF No. 12 ¶ 19.]

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

7.    After Blanco and other servers received the credit card tips through payroll, JCRB required them to pay a portion of those tips to other employees, including bartenders, bussers, food runners, baristas, and kitchen staff. [ECF No. 12 ¶ 20.]

8.    JCRB filed quarterly Forms 941 and annual Forms W-2, W-3, and 8027 with the IRS concerning Plaintiffs and putative class members. [ECF No. 12 ¶¶ 25, 28, 32.]

9.    These information returns overstated the taxable income earned by servers by including as taxable income the tips JCRB required servers to pay to bartenders, bussers, food runners, baristas, and kitchen staff, and understated the income of non-server employees who received those tips by failing to include the tips they received from servers as taxable income. [ECF No. 12 ¶ 23.]

10.    JCRB knew that the information contained in the information returns it provided to the IRS for its employees was false, fraudulent, and inaccurate as a result of JCRB's distributing credit card tips to servers through payroll and requiring servers to pay a portion of those tips to other employees. [ECF No. 12 ¶ 22.]

11.    JCRB knowingly and willfully filed these fraudulent information forms with the IRS. [ECF No. 12 ¶ 26.]

12.    Defendants paid Blanco and other similarly situated servers a direct hourly wage below the full Florida minimum wage and purported to take a tip credit toward their minimum wage obligations. [ECF No. 12 ¶¶ 114, 124, 134.]

13.    As a condition of employment, JCRB required Blanco and other servers to pay a portion of the tips they received directly to back-of-house kitchen employees and baristas who did not customarily and regularly receive tips from patrons. [ECF No. 12 ¶¶ 115, 125, 135.]

14.     By requiring servers to remit tips to traditionally non-tipped employees while taking a tip credit, Defendants failed to comply with 29 U.S.C. § 203(m). [ECF No. 12 ¶¶ 116, 126, 136.]

15.     Defendants failed to pay Blanco the full Florida minimum wage for all hours worked during the relevant time period. [ECF No. 12 ¶¶ 117-118, 128, 138.]

16.     Plaintiff Blanco regularly and routinely worked over 40 hours in one or more workweeks for Defendants. [ECF No. 12 ¶ 78.]

17.     Defendants did not pay Blanco overtime wages calculated at one and one-half times his regular hourly rate (at least the Florida minimum wage) for all hours worked beyond 40 in each workweek. [ECF No. 12 ¶ 80.]

18.     Defendants failed to pay Blanco at least the applicable federal minimum wage of $7.25 per hour for hours worked between approximately August 22, 2022, and November 1, 2023. [ECF No. 12 ¶ 72.]

19.     Defendants willfully and intentionally refused to pay Blanco at least the applicable federal minimum wage and overtime wages. [ECF No. 12 ¶¶ 74, 82.]

20.     Defendants either knowingly, intentionally, or recklessly failed to investigate whether their pay practices violated the FLSA and FMWA. [ECF No. 12 ¶¶ 69, 75, 83, 120, 130, 140.]

21.     Defendants violated the FLSA's prohibition against requiring employees to share their tips with traditionally non-tipped workers by forcing Blanco to share his tips with kitchen staff. [ECF No. 12 ¶ 67.]

22.     Plaintiffs and putative class members suffered damages as a direct and proximate result of Defendants' unlawful pay practices and willful filing of false and fraudulent information returns. [ECF No. 12 ¶¶ 30, 68, 81, 119, 129, 139.]

### III. LEGAL STANDARD FOR MOTION TO DISMISS

5

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). The Court must then determine whether the factual allegations plausibly give rise to an entitlement to relief. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

The standard for granting a motion to dismiss is high, considering that a motion to dismiss is granted only when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). For this reason, Defendants bear the "very high burden" of showing that Plaintiffs cannot conceivably prove any set of facts that would entitle them to relief. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998) (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)).

Dismissal is appropriate only "where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citing *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991)). Dismissal is therefore permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Id.*; *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). Critically, at the motion to dismiss stage, the Court cannot weigh evidence, resolve factual disputes, or determine the credibility of witnesses. *See Chaparro*, 693 F.3d at 1337.

Coral Gables, Florida ⎹ Detroit, Michigan
FairLaw Firm

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For alleged FLSA violations, as in the instant case, these pleading requirements are simple and "quite straightforward." *Sec. of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008); *see also Horwitz v. 13 Cafe & Lounge, Inc.*, 2010 WL 5262772 (M.D. Fla. 2010) (recognizing that FLSA pleading requirements are "simple and straightforward").

While Defendants argue that Count I of the Amended Complaint, alleging violations of 26 U.S.C. § 7434, must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), even claims subject to Rule 9(b) need only provide fair notice of the fraud alleged and the general circumstances surrounding the fraudulent conduct. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") The heightened pleading standard does not require a plaintiff to plead facts establishing each element of the claim with particularity, but rather requires pleading the circumstances constituting fraud with sufficient specificity to give defendants notice of the particular misconduct which is alleged to constitute the fraud. *Id.* At the motion to dismiss stage, the Court must still accept well-pleaded factual allegations as true and draw all reasonable inferences in favor of Plaintiffs.

Moreover, factual disputes regarding the truthfulness of information returns, the employer's knowledge of legal requirements, or whether conduct was willful or reckless are inappropriate for resolution at the motion to dismiss stage. These are precisely the types of factual questions that require development through discovery and are not suitable for dismissal based solely on the

7

pleadings. The question at this stage is not whether Plaintiffs will ultimately prevail, but whether they have stated claims upon which relief can be granted if the factual allegations are proven true.

When measured against the appropriate standard at the motion to dismiss stage, Plaintiffs have sufficiently alleged their claims to withstand dismissal.

## IV. ARGUMENT

Defendants' Motion fails to meet their heavy burden of demonstrating that Plaintiffs cannot prove any set of facts entitling them to relief. The Amended Complaint contains detailed factual allegations establishing each element of the challenged counts, including allegations regarding Defendants' mandatory tip-sharing scheme, their processing and distribution of credit card tips through payroll, their knowledge from prior FLSA litigation, and their willful filing of fraudulent tax information returns. Defendants' motion improperly seeks to resolve factual disputes, weighs evidence, and asks the Court to reject reasonable inferences in Plaintiffs' favor – all of which are inappropriate at the motion to dismiss stage. As demonstrated below, each count of the Amended Complaint survives dismissal.

### A. Count I (26 U.S.C. § 7434) Should Not Be Dismissed

Defendants raise three distinct arguments regarding Count I: (1) Plaintiffs failed to plead willfulness with the particularity required by Rule 9(b); (2) Ortiz lacks statutory standing under § 7434; and (3) Ortiz lacks Article III standing for failure to allege injury-in-fact. Each argument fails.

#### 1. Willfulness/Scienter Properly Pled Under Rule 9(b)

Plaintiffs have adequately alleged willfulness by pleading specific facts showing Defendants knew the information returns were false and acted with reckless disregard for whether their conduct violated the law. The Amended Complaint alleges that JCRB filed Forms W-2, 941, 8027, and W-3 for tax years 2022, 2023, and 2024 that overstated servers' taxable income by including tips servers

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

were required to pay to other employees, while understating non-servers' income who received those tips. [ECF No. 12 ¶¶ 17, 19-20, 22, 28, 32.] These allegations identify the specific parties involved, the particular forms filed, the tax years at issue, and the mechanism by which the information was false—satisfying Rule 9(b)'s particularity requirement while establishing Defendants' knowledge of the falsity

Critically, the Amended Complaint alleges that JCRB "knew that the information contained in the information returns it provided for its employees was false, fraudulent, and inaccurate." [ECF No. 12 ¶ 22.] The Complaint further alleges that "[t]axable income attributable to the Plaintiffs and the IRC Class was false and inaccurate" because it overstated servers' taxable income and understated non-server employees' income. [ECF No. 12 ¶ 23.] Plaintiffs further allege that "JCRB still knowingly and willfully filed and submitted each of these fraudulent information forms (for Plaintiffs and the IRC Class) with the IRS in violation of 26 U.S.C. §7434." [ECF No. 12 ¶ 26.]

The Amended Complaint alleges the mechanism by which JCRB knew of the falsity: JCRB's practice was to process and collect all credit card tips that customers left for each server and then distribute/pay the tips to the server through payroll. [ECF No. 12 ¶ 19.] After servers received the credit card tips through payroll, JCRB required them to pay a portion of those tips to other employees, including bartenders, bussers, food runners, baristas, and kitchen staff. [ECF No. 12 ¶ 20.] "As a result of JCRB's distributing credit card tips to servers through payroll and the requirement that its servers pay a portion of the tips received through payroll to bartenders, bussers, food runners, baristas, and kitchen staff, JCRB knew that the information contained in the information returns it provided for its employees was false, fraudulent, and inaccurate." [ECF No. 12 ¶ 22.] This knowledge of the mandatory tip redistribution, combined with reporting the full amounts as servers'

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

income, establishes willfulness under the applicable standard. *See Soliman v. Sobe Miami, LLC,* 312 F. Supp. 3d 1344, 1356-57 (11th Cir. 2018).

Defendants cite *Leon v. Tapas & Tintos, Inc.,* 51 F. Supp. 3d 1290 (S.D. Fla. 2014), and similar cases for the proposition that § 7434 claims must satisfy Rule 9(b)'s heightened pleading standard. However, *Leon* is distinguishable from the instant case in that plaintiff Leon: (1) asserted a § 7434 claim against an individual defendant as well as a corporate defendant, but failed to provide any factual support that the individual defendant was a filer of the alleged fraudulent information return; and (2) failed to allege specific details regarding how his 1099s issued by the corporate defendant were false or fraudulent, other than purported misclassification as an independent contractor. *Leon*, 51 F. Supp. 32 at 1298. Importantly, while plaintiff Leon's § 7434 claim against the individual defendant was dismissed with prejudice, his claim against the corporate defendant was dismissed without prejudice, with leave to amend. *Id.*

Defendants fail to acknowledge the recent authority from a sister court in *Celeski v. Tom Brown's Rest. at Madison LLC*, 2025 U.S. Dist. LEXIS 407368 (N.D. Ala. Mar. 27, 2025), which certified a § 7434 class action on facts substantially similar to those alleged here. In *Celeski*, the court held that willfulness under § 7434 encompasses knowing or reckless conduct, not just intentional fraud. *Id.* at *12-13 (citing *Doherty v. Turner Broad. Sys., Inc.,* 72 F.4th 324, 328-30 (D.C. Cir. 2023)). The court further held that proof of willfulness requires more than "mere carelessness or negligence" but stops short of requiring "a voluntary, intentional violation of a known legal duty." *Id.* at *13. Similar to the case at bar, in *Soliman v. Sobe Miami, LLC ,* this Court denied the defendant-employer's motion for summary judgment on a § 7434 claim where the plaintiff alleged her employer included mandatory tip pool sums in the plaintiff-employee's total W-2 earnings—presenting "a genuine issue of material  fact as to whether Defendants willfully issued a fraudulent

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

W-2." *Soliman*, 312 F. Supp. 3d at 1356-57 ("Plaintiff testified at her deposition that the amount reported on her 2015 W-2 'is definitely incorrect' because it 'includes the twenty percent and Palace is reporting twenty percent completely. They're not taking out the five percent tip out. The five percent I never make.'"). Here, as in *Celeski* and *Soliman*, Plaintiffs allege that Defendant JCRB knew its servers were required to redistribute portions of their tips to other employees but reported the full amounts as servers' income, creating the same factual predicate for willfulness.

Defendants' reliance on cases requiring greater specificity is misplaced because those cases did not involve detailed factual allegations regarding the employer's knowledge of a mandatory tip redistribution scheme. Here, Plaintiffs have alleged that Defendants: (1) required servers to pay a portion of their tips to other employees, including bartenders, bussers, food runners, baristas, and kitchen staff as a condition of employment [ECF No. 12 ¶¶ 20, 115, 125, 135]; (2) processed and distributed credit card tips to servers through payroll before requiring redistribution [ECF No. 12 ¶ 19]; (3) knew that the information contained in the tax returns they filed was false, fraudulent, and inaccurate as a result of this tip redistribution scheme [ECF No. 12 ¶ 22]; and (4) nevertheless knowingly and willfully filed information returns reporting the full tip amounts as servers' income while failing to report the redistributed amounts as income to the recipients [ECF No. 12 ¶¶ 23, 26]. Accepting these allegations as true, as the Court must at this stage, Plaintiffs have adequately alleged the "who, what, when, why" surrounding the filing of fraudulent returns. *Leon*, 51 F. Supp. 3d at 1298 (comparing *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 20142014 U.S. Dist. LEXIS 8744 (N.D. Ill. Jan. 23, 2014)).

2. <u>Ortiz Has Statutory Standing</u>

Defendants contend that Ortiz lacks standing under § 7434 because the statute permits suit only by "such other person" to whom payments were purportedly made on the fraudulent return. [ECF No. 19 at 2, 7-8.] This argument misreads both the statute and the nature of the alleged fraud. The statute provides: "If any person willfully files a fraudulent information return with respect to payments **purported to be made** to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a) (emphasis added). The statute's use of "purported" makes clear that liability is based on what is reported on the fraudulent return, not on what was actually paid. Here, the fraudulent W-2s purported that certain payment amounts were made to servers like Blanco, when in fact portions of those amounts were redistributed to employees like Ortiz. The phrase "such other person" encompasses all persons whose tax liability was affected by the fraudulent return, including employees like Ortiz whose income was understated because the tips he actually received from servers were not reported as his income. *See Jaramillo v. Moaz, Inc.*, 2020 U.S. Dist. LEXIS 151129 (S.D. Fla. 2020); *Bolling v. PP&G*, 2015 U.S. Dist. LEXIS 169423 (N.D. Md. 2015).

Ortiz alleges that his W-2 understated his income by failing to report the tip income he received from servers through the mandatory tip-sharing scheme. The fraud alleged is not merely that servers' income was overstated, but that JCRB systematically misreported income on information returns by overstating servers' income and understating non-servers' income. Ortiz is "such other person" harmed by fraudulent information returns – specifically, the returns that failed to report as his income the tips he received from servers.

Defendants' narrow reading would create the absurd result that an employer could willfully understate an employee's income on tax documents with impunity, as long as the employee was not the person to whom payments were "purported to be made" on a different fraudulent return.

Nothing in the statutory language supports such a reading. The statute's remedial purpose is to provide a cause of action for persons harmed by fraudulent information returns, and Ortiz has alleged precisely such harm.

    3. <u>Ortiz Has Article III Standing/Injury-in-Fact</u>

Ortiz has adequately alleged concrete, particularized injury sufficient for Article III standing. The underreporting of Ortiz's income creates multiple forms of concrete harm: (a) potential IRS liability for unreported income if the IRS discovers the discrepancy; (b) loss of Social Security and Medicare credits tied to reported earnings; (c) inability to accurately document income for loans, benefits, and other purposes requiring proof of earnings; and (d) costs to retain professional assistance to correct tax documents and filings necessitated by the underreporting.

Significantly, § 7434 provides statutory damages of $5,000 per violation precisely because the harm from fraudulent tax reporting may not always be easily quantifiable at the time of filing. The statute recognizes that fraudulent information returns create cognizable injuries even when the full extent of economic harm has not yet materialized. Courts have repeatedly recognized tax-reporting harm as a concrete injury sufficient for Article III standing. *See, e.g., Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 926 (11th Cir. 2020).

Moreover, Defendants' argument that underreporting cannot constitute injury is contradicted by the very nature of tax obligations. An employee whose income is understated faces the risk of IRS penalties and interest when the discrepancy is discovered, loses retirement benefit credits, and cannot document actual earnings. These are concrete, particularized injuries, not speculative future harms. *Id.*

Defendants cite *Aquino v. Mobis Alabama, LLC,* 739 F. Supp. 3d 1152 (N.D. Ga. May 28, 2024), for the proposition that underreporting does not create standing. However, *Aquino* is

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

distinguishable because the plaintiffs in that case failed to allege any concrete harm beyond the mere fact of underreporting. Here, by contrast, Ortiz has alleged specific harms flowing from the underreporting, including lost Social Security/Medicare credits and potential IRS liability.

**B. Count II (FLSA Tip Violations) Should Not Be Dismissed**

Defendants argue that Count II must be dismissed because Blanco failed to allege that Defendants took a tip credit under the FLSA. This argument fails for multiple reasons.

First, the Amended Complaint adequately alleges that Defendants took a tip credit. The Amended Complaint alleges that Defendants "paid Blanco and other similarly situated servers a direct hourly wage below the full Florida minimum wage and purported to take a tip credit toward their minimum wage obligations." [ECF No. 12 ¶¶ 114, 124, 134.] This allegation, combined with allegations that servers were paid below minimum wage while performing tipped work, necessarily implies that Defendants claimed a tip credit.

Second, even if the Complaint could be read as ambiguous on whether a tip credit was taken, such ambiguity would not warrant dismissal at the pleading stage. The question of whether Defendants took a tip credit is a factual issue that can be resolved through discovery, not on a motion to dismiss. Pay stubs and payroll records in Defendants' possession will definitively establish whether a tip credit was claimed.

Third, Plaintiffs' allegations of separately tracking and reporting tip income on W-2 forms and pay stubs implicitly demonstrate that a tip credit was taken. The Amended Complaint incorporates factual allegations showing that credit card tips were separately identified and tracked in Defendants' payroll system. This separate tracking and reporting of tip income is consistent with – and indeed suggests – that Defendants were taking a tip credit.

14

Fourth, 29 U.S.C. § 203(m)(2)(B) violations are not limited to situations where an employer takes a tip credit. The statute also prohibits employers from keeping tips received by employees "regardless of whether or not the employer takes a tip credit." Thus, even if Defendants did not take a tip credit, requiring servers to share tips with traditionally non-tipped employees may still violate the FLSA. *Wajcman v. Inv. Corp.*, 620 F. Supp. 2d 1353 (S.D. Fla. 2009).

Defendants rely on *Petersen v. Ink 477, LLC*, 2025 WL 1040819 (S.D. Fla. 2025), but that case is distinguishable. In *Petersen*, the complaint contained no allegations whatsoever regarding tip credits or below-minimum-wage payments. Here, by contrast, Plaintiffs have alleged that Defendants paid servers below the full minimum wage and separately tracked tip income. [ECF No. 12 ¶¶ 20, 21, 67].

At most, Defendants have identified a potential pleading deficiency that could be cured by amendment, not grounds for outright dismissal. Courts routinely permit plaintiffs to amend complaints to clarify ambiguities rather than dismissing with prejudice. Any ambiguity regarding whether Defendants took a tip credit is minor and does not prevent Plaintiffs from stating a plausible FLSA tip violation claim.

## C. Count III (FLSA Minimum Wage) Should Not Be Dismissed

Defendants argue Count III is time-barred under the FLSA's two-year statute of limitations because the last alleged minimum wage violation occurred on November 1, 2023, and the Complaint was filed on December 9, 2025. This argument fails because Plaintiffs have adequately alleged willfulness to invoke the three-year limitations period.

### 1. Two-Year SOL Analysis

Even under the two-year statute of limitations, Count III may be timely depending on the precise dates of the alleged violations. The Amended Complaint alleges minimum wage violations

15

occurred "from approximately August 22, 2022, to November 1, 2023" [ECF No. 12 ¶ 72.] and that Blanco was employed through November 7, 2024 [ECF No. 12 ¶ 5]. Discovery will establish the precise dates during which Defendants failed to pay the federal minimum wage and whether any such violations occurred within the two-year limitations period. *See Fernandez v. Great Havana Inc.*, 2023 U.S. Dist. LEXIS 59143, at *12-13 (S.D. Fla. 2023). At the motion to dismiss stage, where all factual allegations must be accepted as true and all reasonable inferences drawn in Plaintiffs' favor, the claim cannot be dismissed as untimely. If any violations occurred after December 9, 2023, those claims would be timely under the two-year limitations period.

2. Three-Year SOL for Willful Violations

More importantly, Plaintiffs have adequately alleged willfulness to invoke the three-year statute of limitations. Under the FLSA, willfulness means the employer either knew its conduct violated the FLSA or showed reckless disregard for whether it did. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008). The Amended Complaint alleges that Defendants "either knowingly, intentionally, or recklessly failed to investigate whether their requirement for Plaintiff Blanco to share a portion of the tips he received with traditionally non-tipped employees violated the FLSA." [ECF No. 12 ¶ 69.] Plaintiffs further allege that Defendants "willfully and intentionally refused to pay Plaintiff Blanco at least the applicable federal minimum wage" and "knew or showed reckless disregard for whether the mandatory tip-remittance policy complied with the FMWA." [ECF No. 12 ¶¶ 74, 120, 129, 140.]

These allegations are not merely conclusory recitations of the legal standard. Rather, they are supported by specific factual allegations demonstrating knowledge and reckless disregard. The Amended Complaint alleges that "as a condition of employment, JCRB required Plaintiff Blanco and the other members of the FMWA Class to pay a portion of the tips they received directly to

16

back-of-house kitchen employees and baristas who did not customarily and regularly receive tips from patrons." [ECF No. 12 ¶ 115.] Defendants "recklessly failed to investigate whether their failure to pay Plaintiff Blanco at least the applicable federal minimum wage...violated the FLSA, knew from being sued for violating the FLSA in the past, intentionally misled Plaintiff Blanco into believing they were not required to pay him the minimum wages required by federal law, and/or devised a scheme that deprived Plaintiff Blanco of the minimum wage pay earned." [ECF No. 12 ¶ 75.] These factual allegations—including Defendants' knowledge from prior FLSA litigation, their intentional misleading of employees, their devising of a scheme to deprive employees of lawful wages, and their enforcement of mandatory tip-sharing as a condition of employment—establish more than reckless disregard; they demonstrate actual knowledge of the FLSA's requirements and deliberate noncompliance. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S. Ct. 1677 (1988); *Labbe*, 319 Fed. Appx. at 764 ("[C]onstruing the facts in the light most favorable to the Secretary, we will presume that the complaint alleges willful violations of FLSA"; "The allegation in the complaint that the defendants submitted 'Receipts for Payment of Back Wages' knowing that they were false is sufficient to suggest equitable tolling"). Moreover, even the mere allegation that Defendants "knowingly and willfully" failed to pay full and proper wages under the FLSA is sufficient to satisfy the pleading standard for willfulness. *Fernandez*, 2023 U.S. Dist. LEXIS 59143, at *3, 11-13.

The *Celeski* decision supports Plaintiffs' position on willfulness in tip-pooling cases. In that case, the court found that the employer's knowledge of a mandatory tip-pool system, combined with awareness that the system affected employees' wages, supported a finding of willfulness. 2025 U.S. Dist. LEXIS 190868, at *30. The court specifically noted that "assessing whether willfulness underlies the decision to implement the system incites analysis into the Defendants' decision-making vis-à-vis the putative class as a whole, not as to each individual member of the class." *Id.* at *31.

17

Similarly, in *Soliman*, the court found a factual dispute on willfulness where the employer implemented a mandatory tip pool and reported inflated income on W-2 forms. 312 F. Supp. 3d at 1356-57. Here, Plaintiffs have alleged facts at least as strong as those in *Celeski* and *Soliman*: a mandatory tip-sharing scheme enforced through electronic monitoring, management awareness of the scheme, and knowledge that servers were being paid below minimum wage while being required to share tips with non-tipped employees.

Defendants cite *Rovira v. Trattoria Romana, Inc.*, 2024 WL 693063 (S.D. Fla. 2024), and *Jimenez v. Cruz & Cruz, Inc.*, 2024 WL 4555937 (S.D. Fla. 2024), but those cases are distinguishable. In both *Rovira* and *Jimenez*, the complaints contained only bare allegations that the defendants "knew or should have known" FLSA requirements and "willfully/intentionally/recklessly" failed to comply, without any factual support. Here, by contrast, Plaintiffs have alleged detailed facts showing Defendants' knowledge: enforcement of mandatory tip-outs through WhatsApp and Zelle, monitoring of compliance, threats of retaliation, and awareness that servers were being paid below minimum wage while sharing tips with non-eligible employees.

At the motion to dismiss stage, Plaintiffs need only plausibly allege willfulness – they need not prove it. *Hernandez v. Stingray Grp. Inc.*, 2025 LX 112569 (S.D. Fla. Mar. 4, 2025). The factual allegations in the Amended Complaint, taken as true and with all inferences drawn in Plaintiffs' favor, plausibly suggest that Defendants either knew their conduct violated the FLSA or acted with reckless disregard for whether it did. Whether Defendants can ultimately prove good faith or lack of willfulness is a question for summary judgment or trial, not dismissal.

## D. Count IV (FLSA Overtime) Should Not Be Dismissed

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

Defendants argue that Blanco failed to allege the "amount and extent" of overtime work required to state an FLSA overtime claim. This argument improperly seeks to impose heightened pleading requirements inconsistent with Rule 8's notice pleading standard.

The Amended Complaint alleges that "Plaintiff Blanco regularly and routinely worked over 40 hours in one or more workweeks for Defendants" and that "Defendants did not pay Plaintiff Blanco overtime wages calculated at one and one-half times his regular hourly rate (of at least the applicable Florida minimum wage) for all the hours he worked beyond 40 in each workweek." [ECF No. 12 ¶¶ 78, 80.] These allegations provide Defendants with adequate notice of the overtime claim and satisfy Rule 8's pleading requirements.

Plaintiffs, as former employees, lack access to precise time records, which are in Defendants' possession and control. Discovery will reveal the exact hours worked and weeks in which overtime occurred. Courts have consistently held that plaintiffs need not plead exact hours or specific weeks to survive a motion to dismiss – they need only provide enough detail to make the claim plausible and give defendants notice. *Labbe*, 319 F. App'x 761; *Prather v. Wal-Mart Assocs., Inc.,* 2024 LX 102676 (N.D. Ga. Sep. 30, 2024).

Defendants cite *Hernandez v. Anderson*, 2015 WL 3514483 (M.D. Fla. 2015), for the proposition that plaintiffs must show "as a matter of just and reasonable inference the amount and extent of work." However, *Hernandez* and similar cases recognize that the "amount and extent" requirement can be satisfied by general allegations of regular overtime work, particularly where the plaintiff lacks access to employer-controlled time records. *Id.*; *Labbe*, 319 F. App'x 761. Moreover, the FLSA plaintiff in *Hernandez* "fail[ed] to provide any dates or date ranges during which he worked overtime[.]" *Hernandez*, 2015 U.S. Dist. LEXIS 72342, at *14. Here, Blanco has alleged

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

he "regularly and routinely" worked over 40 hours during the three years preceding the filing of the Complaint, which provides sufficient detail at the pleading stage.

Any lack of specificity regarding exact dates or the number of overtime hours is appropriate at the pleading stage and does not warrant dismissal. *Sec'y of Labor v. Labbe*, 319 F. App'x 761 (11th Cir. 2008). As Plaintiffs proceed through discovery and obtain Defendants' complete time and payroll records, they will be able to calculate precise overtime amounts. Dismissal would be particularly inappropriate here where Defendants possess all relevant time records and Plaintiffs have alleged sufficient facts to put Defendants on notice of the overtime claim.

Accepting all allegations as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court must, Count IV states a plausible claim for FLSA overtime violations and should not be dismissed.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Plaintiffs' Amended Complaint in its entirety. The Amended Complaint adequately states claims under the applicable legal standards for violations of 26 U.S.C. § 7434, the Fair Labor Standards Act, and the Florida Minimum Wage Act. Plaintiffs have alleged detailed factual allegations that plausibly establish each element of their claims. Count V, which Defendants do not challenge, remains fully viable. In the alternative, if the Court finds any deficiency in the pleadings as to Counts I, II, III, or IV, Plaintiffs respectfully request leave to amend and that any dismissal be without prejudice. Plaintiffs are prepared to cure any perceived pleading deficiency expeditiously.

Respectfully submitted this 27th day of March 2026,

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
**FAIRLAW FIRM**
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiff*

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm