UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-25762-BECERRA/TORRES

CRISTIAN CAMILO BLANCO ACOSTA
and SERGIO ARDILA ORTIZ,

      Plaintiffs,

v.

JCRB INC. D/B/A BISTRO CAFÉ,
JAN KARLO RUIZ ORTIZ, and
TAMARA PEREZ FELICIANO,

      Defendants.

_____/

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Cristian Camilo Blanco Acosta ("Blanco") and Sergio Ardila Ortiz ("Ardila"), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), 23(c)(1)(B), 23(c)(2)(B), 23(c)(5), and 23(g), respectfully move for certification of one Rule 23 class under the Florida Minimum Wage Act, Fla. Stat. § 448.110 and Article X, Section 24 of the Florida Constitution ("FMWA"), and two subclasses under 26 U.S.C. § 7434.

This case arises from uniform restaurant-wide compensation and tax-reporting practices allegedly implemented by Defendants at Bistro Café. According to Plaintiffs' proposed Second Amended Complaint and the declarations submitted in support of this Motion, Defendants required every server to surrender predetermined portions of customer gratuities to bussers, runners, bartenders, baristas, and kitchen employees pursuant to a mandatory tip-out policy enforced by management. [ECF No. 27-1 ¶ 20]. Defendants simultaneously paid credit-card gratuities through payroll, reported the full amount of those gratuities as taxable income to servers,

1

and allegedly failed to report the remitted tip income as wages to the employees who actually received it. [ECF No. 27-1 ¶¶ 22–23]. Plaintiffs further allege that Defendants claimed the Florida tip credit while requiring servers to share gratuities with employees who did not customarily and regularly receive tips. [ECF No. 27-1 ¶¶ 96, 123-124].

These claims present quintessential Rule 23 issues. Whether Defendants maintained a uniform mandatory tip-out policy, whether they uniformly prepared wage and tax records in the same manner for all employees, whether their tax reporting violated § 7434, and whether their tip-pooling practices invalidated the FMWA tip credit are questions capable of generating common answers for every class member in a single proceeding. Resolution of those issues will depend almost entirely upon common proof — including payroll records, Forms W-2, personnel records, point-of-sale data, tip records, tax filings, and Defendants' policies — not individualized testimony.

The Supreme Court and the Eleventh Circuit have repeatedly recognized that Rule 23 is designed for precisely this type of litigation, where liability turns on common conduct affecting all class members alike. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004); *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016).

Because the proposed classes satisfy every requirement of Rules 23(a) and 23(b)(3), Plaintiffs respectfully request that the Court certify the proposed classes, appoint the named Plaintiffs as class representatives, appoint FairLaw Firm as class counsel, approve the proposed class notice, and grant such further relief as justice requires.

## I. RELIEF REQUESTED

Plaintiffs respectfully request that this Court enter an order:

1. Certifying the following Rule 23(b)(3) classes:

a. **IRC Server Subclass:** All persons employed by JCRB Inc. d/b/a Bistro Café as servers during the five years immediately preceding the filing of this action through the date of class notice, who received customer tips through payroll and for whom JCRB Inc. filed one or more Forms W-2 or other qualifying information returns that reported as that employee's income tip amounts the employee was required to remit to other workers.

b. **IRC Tip-Recipient Subclass:** All persons employed by JCRB Inc. d/b/a Bistro Café in positions other than server during the five years immediately preceding the filing of this action through the date of class notice, who received mandatory tip-out payments from servers and for whom JCRB filed one or more Forms W-2 or other qualifying information returns that did not report those tip-out amounts as that employee's income.

c. **FMWA Class:** All persons employed by JCRB Inc. d/b/a Bistro Café as servers during the five years immediately preceding the filing of this action through the date of class notice, who were paid a tipped cash wage below the full Florida minimum wage while Defendants claimed a tip credit and required them to remit tips to kitchen employees, baristas, or other employees whom the evidence shows did not customarily and regularly receive tips.

2. Excluding from all classes Defendants; any officer, director, or managing agent of Defendants; the presiding Judge and judicial staff; and any person who timely requests exclusion.

3. Appointing Plaintiff Blanco as representative for the IRC Server Subclass and the FMWA Class.

4. Appointing Plaintiff Ardila as representative for the IRC Tip-Recipient Subclass.

5. Appointing FairLaw Firm as class counsel under Rule 23(g).

6. Approving the proposed class notice and notice plan attached as Exhibit "A."

7. Directing Defendants to produce class-member contact data and the payroll, personnel, tip-out, and tax-reporting records needed to administer notice and calculate damages.

## II. FACTUAL BACKGROUND

Plaintiffs' proposed Second Amended Complaint alleges that Defendants owned and operated Bistro Café in Miami-Dade County, Florida. [ECF No. 27-1 ¶¶ 8-9]. Plaintiff Blanco

3

worked as a server from approximately 2022 through November 7, 2024. [ECF No. 27-1 ¶ 5]; (Ex. B, "Blanco Decl.", ¶ 2). Plaintiff Ardila worked as a busser and food runner from approximately March through November 2024. [ECF No. 27-1 ¶ 7]; (Ex. C, "Ardila Decl.", ¶ 2). During that time, Defendants maintained a mandatory tip-out system applicable to every server working at the restaurant. [ECF No. 27-1 ¶¶ 20, 96];

Rather than permitting servers to determine whether or how much to share with coworkers, management required servers to remit predetermined portions of their gratuities to bussers, runners, bartenders, baristas, kitchen employees, and other designated personnel. [ECF No. 27-1 ¶ 20]; (Blanco Decl. ¶ 7). The evidence submitted with this Motion demonstrates that management actively monitored compliance, communicated the required payments through a restaurant-wide WhatsApp group, directed individual employees to make specific payments, and threatened discipline — including cancellation of scheduled shifts — for employees who failed to comply. (Blanco Decl. ¶¶ 13, 15, 22).

Four employee declarations spanning nearly the entire proposed class period confirm that the mandatory tip-out policy remained materially unchanged throughout their employment. (Blanco Decl. ¶ 10; Ardila Decl. ¶ 10; Ex. D, "Maldonado Decl.", ¶¶ 9, 12); Ex. E, "Vargas Decl.", ¶¶ 8, 14). Collectively, those declarations establish that approximately seventeen to eighteen servers worked at the restaurant during any given period (Blanco Decl. ¶ 11; Maldonado Decl. ¶ 13), that every server participated in the same mandatory tip-out system (Blanco Decl. ¶¶ 9-11; Maldonado Decl. ¶¶ 12-13; Ardila Decl. ¶¶ 8-9), and that management uniformly enforced that policy regardless of which individual server happened to be working (Blanco Decl. ¶¶ 11-12; Maldonado Decl. ¶ 13; Ardila Decl. ¶ 9).

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

Plaintiffs further allege that Defendants processed customer gratuities through payroll but reported the full amount of those gratuities as taxable wages to servers without deducting the mandatory tip-out amounts they were required to transfer to other employees. [ECF No. 27-1 ¶¶ 22–23(a)]; (Blanco Decl. ¶¶ 23-24; Maldonado Decl. ¶ 18). Conversely, employees receiving those mandatory tip-out payments allegedly received no corresponding wage or tax reporting reflecting those payments as taxable income. [ECF No. 27-1 ¶ 23(b)]; (Ardila Decl. ¶ 12; Maldonado Decl. ¶ 17; Vargas Decl. ¶ 15). Whether Defendants employed this uniform reporting methodology, and whether doing so violated 26 U.S.C. § 7434, presents a common question capable of class-wide resolution through payroll records, Forms W-2, tax filings, and other common documentary evidence.

Plaintiffs additionally allege that Defendants claimed the Florida tip credit while simultaneously requiring servers to share gratuities with kitchen employees and baristas who did not customarily and regularly receive tips from customers, and who did not interact with Bistro Café's patrons. [ECF No. 27-1 ¶¶ 96, 123-124]; (Blanco Decl. ¶¶ 7, 19-20; Maldonado Decl. ¶¶ 8, 15-16). If proven, that common practice would invalidate Defendants' reliance upon the FMWA tip credit for every affected server during the class period.

### III. GOVERNING LEGAL STANDARDS

Class certification is governed by Rule 23. Plaintiffs bear the burden of demonstrating that the proposed classes satisfy each requirement of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and one subsection of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23 does not require Plaintiffs to prove the merits of their claims before certification. Rather, the Court conducts a "rigorous analysis" only to determine whether the Rule's procedural requirements have been satisfied, even where that inquiry overlaps with the merits. *Wal-Mart Stores,*

5

*Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

For Rule 23(b)(3), Plaintiffs must demonstrate both predominance and superiority. Predominance asks whether the common issues capable of class-wide resolution outweigh individualized issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The inquiry focuses on liability — not whether each class member ultimately receives identical damages. Individualized damages calculations generally do not defeat certification where liability is susceptible to common proof. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1237-39 (11th Cir. 2016); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004). Likewise, the Eleventh Circuit has rejected any freestanding administrative-feasibility requirement. A proposed class is ascertainable so long as it is defined using objective criteria capable of identifying class members. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302–04 (11th Cir. 2021).

## IV. ARGUMENT

### *Plaintiffs Satisfy Rule 23(a)*

**A. Numerosity.**

Class certification is governed by Rule 23. Plaintiffs bear the burden of demonstrating that the proposed classes satisfy each requirement of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and one subsection of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23 does not require Plaintiffs to prove the merits of their claims before certification. Rather, the Court conducts a "rigorous analysis" only to determine whether the Rule's procedural

requirements have been satisfied, even where that inquiry overlaps with the merits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

For Rule 23(b)(3), Plaintiffs must demonstrate both predominance and superiority. Predominance asks whether the common issues capable of class-wide resolution outweigh individualized issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The inquiry focuses on liability — not whether each class member ultimately receives identical damages. Individualized damages calculations generally do not defeat certification where liability is susceptible to common proof. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1237-39 (11th Cir. 2016); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004).

Likewise, the Eleventh Circuit has rejected any freestanding administrative-feasibility requirement. A proposed class is ascertainable so long as it is defined using objective criteria capable of identifying class members. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302–04 (11th Cir. 2021).

### B. Commonality.

Rule 23(a)(2) requires only "one question" capable of generating a common answer that will drive resolution of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality does not require every issue to be identical. Rather, the inquiry asks whether the claims depend upon a common contention whose truth or falsity may be determined "in one stroke." *Id.*

This case presents numerous such questions. For the IRC subclasses, the central liability questions include:

a.  whether Defendants uniformly required servers to remit portions of their customer gratuities pursuant to a mandatory tip-out policy;

b.  whether Defendants nevertheless reported the full amount of those gratuities as taxable income on servers' Forms W-2;

c.  whether Defendants simultaneously failed to report those same gratuities as income to the employees who actually received them; and

d.  whether that common reporting methodology resulted in the filing of fraudulent information returns in violation of 26 U.S.C. § 7434.

These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

Likewise, the FMWA claim turns upon common questions capable of class-wide resolution, including whether Defendants uniformly claimed the Florida tip credit while requiring servers to distribute gratuities to employees who did not customarily and regularly receive tips from customers. Each of those questions is susceptible to common proof. Plaintiffs do not challenge individualized employment decisions, discretionary managerial judgments, or varying workplace practices. Rather, they challenge uniform compensation and reporting practices allegedly imposed upon every affected employee. The relevant evidence—including payroll records, point-of-sale data, personnel records, Forms W-2, tax filings, pay records, schedules, and Defendants' communications—will answer those questions for every class member at the same time.

This case therefore stands in sharp contrast to *Wal-Mart*. There, certification failed because millions of discretionary employment decisions made by thousands of managers could not generate a common answer regarding discrimination. 564 U.S. at 355-56. Here, Plaintiffs allege the opposite: a single mandatory compensation system, a single mandatory tip-out policy, and a single tax-reporting methodology uniformly implemented by the same employer at one restaurant.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

Whether those practices violated federal and Florida law is precisely the type of common contention Rule 23 was designed to resolve.

The declarations submitted with this Motion reinforce — not create — that commonality. Each declarant independently describes the same mandatory tip-out system, the same categories of employees receiving tip-outs, the same managerial enforcement, and the same payroll and tax-reporting practices despite working during different periods and in different positions. (Blanco Decl. ¶¶ 7-12; Maldonado Decl. ¶¶ 7-13; Ardila Decl. ¶¶ 4-10; Vargas Decl. ¶¶ 4-14). The consistency of those accounts confirms that liability will rise or fall based upon common evidence rather than individualized testimony. Accordingly, Rule 23(a)(2) is satisfied.

## C. Typicality.

Typicality requires only that the named plaintiffs' claims arise from the same course of conduct and are based upon the same legal theory as the claims of absent class members. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). The requirement is permissive because "a sufficient nexus" between the representative's claims and those of the class ordinarily satisfies Rule 23(a)(3). *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). That standard is readily met.

Plaintiff Blanco challenges the same mandatory tip-out policy, payroll practices, and tax-reporting methodology allegedly applied to every server employed by Defendants. [ECF No. 27-1 ¶¶ 31-32]; (Blanco Decl. ¶¶ 7, 23-24). His claims arise from the same conduct, depend upon the same documentary evidence, and seek relief under the same statutory provisions as every member of the proposed IRC Server Subclass and FMWA Class.

Similarly, Plaintiff Ardila alleges that Defendants required him to receive mandatory tip-out payments while failing to report those payments as taxable income. [ECF No. 27-1 ¶¶ 31-32];

9

(Ardila Decl. ¶ 12). His injury arises from the same reporting practice allegedly affecting every member of the proposed IRC Tip-Recipient Subclass.

Neither Plaintiff relies upon facts unique to his individual employment. Instead, both seek to establish liability by proving the existence of uniform company-wide practices applicable to every member of the respective classes. Success or failure of their claims therefore will substantially resolve the claims of absent class members as well. Typicality is therefore satisfied.

## D. Adequacy.

Rule 23(a)(4) requires that the named representatives fairly and adequately protect the interests of the class. The inquiry focuses upon whether the representatives possess interests antagonistic to those of absent class members and whether counsel is qualified to prosecute the litigation. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). No conflict exists here.

The proposed subclass structure eliminates any potential divergence of interests between employees allegedly overreported on Defendants' tax filings and employees allegedly underreported. Plaintiff Blanco seeks to represent only those employees whose reported income allegedly included gratuities they never retained, while Plaintiff Ardila seeks to represent only employees whose received tip income allegedly went unreported. Because each representative advocates exclusively for employees who sustained the same alleged injury, no intra-class conflict exists. See *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278-80 (11th Cir. 2000). Nor do Plaintiffs compete for a limited recovery fund. Each class member seeks recovery based upon his or her own statutory injury, and success by one subclass does not diminish the recovery available to another.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

Both named Plaintiffs have actively participated in this litigation, produced Court-mandated discovery to Defendants, provided declarations, and demonstrated their willingness to continue representing the proposed classes through trial if necessary. (Blanco Decl. ¶¶ 26-28; Ardila Decl. ¶¶ 13-15). Plaintiff Blanco understands that serving as a class representative requires acting in the best interests of the class, maintaining communication with counsel, providing information, participating in discovery, and, if necessary, attending hearings, depositions, or trial. (Blanco Decl. ¶ 27). Plaintiff Ardila likewise understands his obligations as a class representative and has confirmed his willingness to act in the best interests of the non-server employees he seeks to represent. (Ardila Decl. ¶ 14). Plaintiff Blanco has no interests that conflict with those of the servers he seeks to represent, (Blanco Decl. ¶ 28), and Plaintiff Ardila has no interests that conflict with those of the non-server employees he seeks to represent (Ardila Decl. ¶ 15).

Likewise, FairLaw Firm satisfies Rule 23(g). Counsel has investigated the claims, interviewed witnesses, collected documentary evidence, prepared the pleadings, conducted discovery, and possesses substantial experience litigating wage-and-hour and employment class actions in federal court. [ECF No. 27-1 ¶ 33]. Counsel has committed the resources necessary to prosecute this litigation vigorously through trial and any appeal. Accordingly, Rule 23(a)(4) is satisfied.

### *Plaintiffs Satisfy Rule 23(b)(3).*

### A.  Common Questions Predominate Over Any Individual Issues.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is "far more demanding" than Rule 23(a)'s commonality requirement, *Amchem Prods., Inc. v. Windsor,*

521 U.S. 591, 623-24 (1997), but it is satisfied whenever the proposed class is sufficiently cohesive to warrant adjudication by representation. *Id.*

The Eleventh Circuit has explained that predominance exists when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). The inquiry focuses primarily upon liability. Individualized damages calculations ordinarily do not defeat predominance where liability itself may be established through common evidence. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1237-39 (11th Cir. 2016); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016).

This case presents precisely the type of common liability questions contemplated by Rule 23(b)(3). Unlike cases involving individualized employment decisions or discretionary managerial practices, Plaintiffs challenge two standardized employment policies that allegedly governed every affected employee throughout the proposed class period: (1) Defendants' mandatory tip-remittance policy, and (2) Defendants' uniform payroll and tax-reporting methodology. Whether those common practices violated 26 U.S.C. § 7434 and the Florida Minimum Wage Act will be determined through common evidence applicable to every class member.

### 1. The IRC Claims Turn Upon Common Evidence.

The IRC subclasses present a straightforward liability question: did Defendants employ a common tax-reporting methodology that knowingly resulted in false or fraudulent information returns? That question does not depend upon individualized conduct by any employee. Rather, it turns upon Defendants' own payroll procedures, accounting practices, and tax filings. Among the principal common questions are:

12

a.  whether Defendants required servers to remit predetermined portions of customer gratuities to other employees;

b.  whether Defendants nevertheless reported those remitted gratuities as income earned by the servers (Blanco Decl. ¶¶ 23-24; Maldonado Decl. ¶ 18);

c.  whether Defendants failed to report those same gratuities as income to the employees who actually received them (Ardila Decl. ¶ 12; Maldonado Decl. ¶ 17; Vargas Decl. ¶ 15);

d.  whether those reporting practices were intentional or willful within the meaning of 26 U.S.C. § 7434; and

e.  whether Defendants utilized that methodology consistently throughout the proposed class period (Blanco Decl. ¶ 10; Vargas Decl. ¶ 16).

Each question will be answered using the same categories of evidence for every class member, including payroll records, Forms W-2, Forms W-3, Forms 941, payroll registers, point-of-sale reports, personnel records, accounting records, and testimony from Defendants' managers and payroll personnel. The addition or subtraction of individual class members will not materially alter the proof required to establish liability. *See Klay*, 382 F.3d at 1255. Either Defendants employed the challenged reporting methodology or they did not. That issue will be resolved once for the entire class.

2. The FMWA Claims Likewise Present Common Liability Questions.

The FMWA claim similarly turns upon uniform restaurant-wide practices. Plaintiffs allege that Defendants paid servers a tipped hourly wage below the full Florida minimum wage while claiming the statutory tip credit and simultaneously requiring those servers to surrender portions of their gratuities to kitchen employees, baristas, and other employees who did not customarily and regularly receive customer tips. The central liability questions therefore include:

a.  whether Defendants claimed a tip credit;

b.  whether Defendants required servers to participate in a mandatory tip pool;

c.  which categories of employees received mandatory tip-out payments (Blanco Decl. ¶ 7; Maldonado Decl. ¶ 8; Ardila Decl. ¶ 4; Vargas Decl. ¶ 4);

d.  whether those employees customarily and regularly received tips from customers within the meaning of 29 U.S.C. § 203(m), as incorporated into Article X, Section 24 of the Florida Constitution (Blanco Decl. ¶ 19; Maldonado Decl. ¶ 15; Vargas Decl. ¶ 13); and

e.  whether Defendants consequently forfeited their entitlement to claim the tip credit.

Again, those issues concern Defendants' common policies—not individualized circumstances unique to particular employees. Indeed, the legality of a tip pool is ordinarily determined by examining the employer's policy itself. If the policy violates § 203(m), every server subjected to that policy is affected in the same manner. Whether individual servers happened to receive different amounts of gratuities or worked different schedules does not alter the legal question presented.

### 3. Individualized Damages Do Not Defeat Certification.

Defendants may argue that individualized damages calculations preclude certification because class members earned different wages, worked different hours, or received different amounts of gratuities. That argument is foreclosed by Supreme Court and Eleventh Circuit precedent.

The Supreme Court has repeatedly recognized that Rule 23(b)(3) does not require every element of damages to be susceptible to class-wide proof. *Tyson Foods*, 577 U.S. at 453-54. Likewise, the Eleventh Circuit has held that individualized damages issues generally do not defeat predominance where liability itself depends upon common proof. *Brown*, 817 F.3d at 1239; *Klay*, 382 F.3d at 1259-60.

Here, damages can be calculated mechanically using Defendants' own business records. For the IRC subclasses, statutory damages are fixed by statute, while any actual damages may be determined from Defendants' payroll records, tax filings, and IRS reporting documents. Likewise,

14

damages for the FMWA class may be calculated by comparing each server's tipped hourly wage to the full Florida minimum wage for each hour worked during the applicable limitations period. Payroll records, time records, and wage rates will permit those calculations using objective formulas. Because damages are derivative of common liability findings and susceptible to objective calculation, they present no obstacle to certification

4. This Case Is the Opposite of *Wal-Mart.*

The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes* illustrates why predominance exists here. In *Wal-Mart*, certification was denied because the challenged employment decisions were made independently by thousands of supervisors exercising discretionary authority across thousands of stores. 564 U.S. at 355-56. No common policy linked those decisions together.

Here, Plaintiffs challenge the opposite. The proposed classes arise from a single restaurant operating under one ownership group, one payroll system, one compensation structure, one mandatory tip-remittance policy, and one allegedly uniform tax-reporting methodology. Plaintiffs do not ask the Court to examine thousands of individualized employment decisions. They ask the Court to determine whether Defendants' standardized compensation and reporting practices complied with federal and Florida law. That determination will produce a common answer for every class member. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

**B. A Class Action Is Superior to Hundreds of Individual Lawsuits.**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." That requirement is readily satisfied.

First, the overwhelming majority of absent class members possess relatively modest individual claims. While Congress authorized statutory damages under § 7434 and Florida law

15

provides for unpaid minimum wages and liquidated damages, the practical costs of investigating payroll records, retaining experts if necessary, conducting discovery, and litigating federal claims substantially exceed the economic value of many individual actions. Absent class treatment, many employees would simply forgo pursuing their claims altogether. Rule 23 exists precisely to overcome that economic reality. *Amchem*, 521 U.S. at 617; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Second, litigating these claims individually would produce enormous duplication of effort. Every action would require the same witnesses, the same payroll records, the same tax documents, the same restaurant policies, and the same legal determinations concerning § 7434 and the FMWA. Separate proceedings would risk inconsistent rulings regarding identical compensation practices. A single class proceeding avoids those inefficiencies while ensuring uniform adjudication of common legal questions. See *Klay*, 382 F.3d at 1269.

Finally, this action is readily manageable. The proposed classes are objectively defined, limited to a single restaurant, and identifiable through Defendants' payroll, personnel, and tax records. Class membership does not depend upon subjective recollections or individualized mini-trials. The Court therefore can readily determine class membership, supervise notice, adjudicate liability, and calculate damages using Defendants' existing business records.

For these reasons, proceeding as a Rule 23 class action is not merely superior—it is the only realistic method of fairly and efficiently resolving the common issues presented by Defendants' alleged uniform compensation and reporting practices.

### C. Appointment of Class Representatives

Rule 23(g) requires the Court to appoint class representatives who will fairly and adequately protect the interests of the proposed classes. As discussed above, Plaintiff Blanco's claims arise from

16

the same mandatory tip-remittance policy and payroll practices affecting every member of the proposed IRC Server Subclass and FMWA Class. (Blanco Decl. ¶¶ 7, 23-24). Plaintiff Ardila likewise challenges the same payroll and tax-reporting methodology affecting every member of the proposed IRC Tip-Recipient Subclass. (Ardila Decl. ¶ 12).

Both Plaintiffs have actively participated in this litigation by meeting with counsel, providing documents, produced Court-ordered discovery, preparing sworn declarations, and remaining available throughout the litigation. They understand their responsibilities as class representatives and have demonstrated their willingness to continue representing the proposed classes through trial if necessary. (Blanco Decl. ¶ 27; Ardila Decl. ¶ 14).

Neither Plaintiff possesses interests antagonistic to those of the absent class members. Rather, both seek precisely the same relief arising from the same course of conduct allegedly implemented by Defendants. Appointment of Plaintiffs as class representatives is therefore appropriate under Rule 23(a)(4).

### D. Appointment of Class Counsel

Federal Rule of Civil Procedure 23(g) directs the Court to appoint class counsel after considering: (1) the work counsel has performed investigating the claims; (2) counsel's experience in handling class actions and similar litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

Each factor favors appointment of FairLaw Firm. Counsel thoroughly investigated the factual basis for Plaintiffs' claims before filing suit, interviewed numerous witnesses, obtained payroll records, wage records, Forms W-2, WhatsApp communications, and other documentary evidence, prepared the Second Amended Complaint, conducted discovery, and prepared this Motion. Plaintiffs' lead counsel, Brian H. Pollock, Esq. was appointed as lead counsel to represent

17

collective actions in *Peña v. Handy Wash, Inc.*, S.D. Fla. Case No. 14-20352-ALTONAGA, in *Caamano v. 7 Call Center Inc.*, S.D. Fla. Case No. 16-CV-20932-GAYLES, in *Benjamin v. VHU Express, Inc.*, S.D. Fla. Case No. 15-CV-20542-KING, in *Freese v. Treecycle Land Clearing Inc.*, S.D. Fla. Case No. 17-CV-81169-REINHART, and in *Collado v. 450 North River Drive, LLC*, S.D. Fla. Case No. 1-22-CV-20374-WILLIAMS. Mr. Pollock was also appointed as class counsel in several class actions, including a class of servers seeking unpaid minimum wages under the Florida Minimum Wage Act in *Rojas Molina v. Yankee Development Corp. d/b/a A Fish Called Avalon*, Eleventh Circuit Court for Miami-Dade Case No. 16-010745 CA 01 (09), and for over 60 employees seeking underpaid wages in *Azor v. Direct Airlines Services, Inc.*, Eleventh Circuit Court for Miami-Dade Case No. 17-007921 CA 01 (32). Finally, counsel has committed — and will continue to commit — the resources necessary to vigorously prosecute this litigation through trial and any appeal. Accordingly, Plaintiffs respectfully request that FairLaw Firm be appointed Class Counsel pursuant to Rule 23(g).

### E. Class Notice

If the Court certifies the proposed classes, Rule 23(c)(2)(B) requires that the Court direct the best notice practicable under the circumstances. Plaintiffs propose individual notice by first-class mail, electronic mail, and SMS message to all class members identifiable through reasonable effort from Defendants' payroll, personnel, and tax records. [ECF No. 27-1 ¶¶ 45, 111]. To facilitate notice, Plaintiffs respectfully request that Defendants be ordered, within fourteen (14) days after entry of the certification Order, to produce an electronic spreadsheet containing each class member's full name, last known mailing address, last known email address, telephone number, dates of employment, job position(s), employee identification number (if any), dates of birth (if maintained), payroll identification number (if maintained), and Social Security Number in

18

encrypted or last-four-digit format sufficient to permit skip tracing if notice is returned as undeliverable.

Producing this information imposes minimal burden because it already exists within Defendants' payroll and personnel systems and is routinely ordered in Rule 23 employment actions. The proposed notice satisfies Rule 23(c)(2)(B) by clearly describing the nature of the action, the class definitions, the claims asserted, the right to appear through counsel, the right to request exclusion, the binding effect of any judgment, and all applicable deadlines. Because this action also includes FLSA claims, the notice should further explain that certification of the Rule 23 classes neither adjudicates nor replaces any separate FLSA collective-action procedures.

## V. CONCLUSION

Rule 23 was designed for cases such as this. Rather than challenging individualized employment decisions, Plaintiffs challenge standardized payroll, compensation, and tax-reporting practices allegedly implemented uniformly by a single employer at a single restaurant. The dispositive liability questions are common to every proposed class member:

a.  whether Defendants maintained a mandatory tip-remittance policy;

b.  whether Defendants claimed the Florida tip credit while requiring servers to share gratuities with employees who did not customarily and regularly receive tips;

c.  whether Defendants uniformly reported remitted gratuities as income earned by servers;

d.  whether Defendants simultaneously failed to report those gratuities as income earned by the employees who actually received them; and

e.  whether those common practices violated the Florida Minimum Wage Act and 26 U.S.C. § 7434.

Each of those questions will be answered through the same payroll records, tax records, personnel files, point-of-sale records, and testimony concerning Defendants' common business practices. Because liability rises or falls on evidence common to every class member, the proposed

classes satisfy Rule 23(a) and Rule 23(b)(3). Litigating dozens of nearly identical individual actions would needlessly duplicate discovery, create the risk of inconsistent adjudications, and undermine the efficiencies Rule 23 was enacted to achieve.

Accordingly, Plaintiffs respectfully request that this Court enter an Order:

1. Certifying the proposed IRC Server Subclass, IRC Tip-Recipient Subclass, and Florida Minimum Wage Act Class pursuant to Rule 23(b)(3);

2. Appointing Plaintiff Blanco as representative of the IRC Server Subclass and FMWA Class;

3. Appointing Plaintiff Ardila as representative of the IRC Tip-Recipient Subclass;

4. Appointing FairLaw Firm as Class Counsel pursuant to Rule 23(g);

5. Approving Plaintiffs' proposed class notice;

6. Directing Defendants to produce the information necessary to provide Rule 23 notice; and

7. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 29th day of June 2026,

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiff*