UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-25762-BECERRA/TORRES

CRISTIAN CAMILO BLANCO ACOSTA
and SERGIO ARDILA ORTIZ,

      Plaintiffs,

v.

JCRB INC. D/B/A BISTRO CAFÉ,
JAN KARLO RUIZ ORTIZ, and
TAMARA PEREZ FELICIANO,

      Defendants.

_____/

## MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND FOR COURT-FACILITATED NOTICE

Plaintiff Cristian Camilo Blanco Acosta, by and through undersigned counsel, respectfully moves this Court for an Order conditionally certifying a collective action pursuant to 29 U.S.C. § 216(b) and authorizing court-facilitated notice to similarly situated employees. Plaintiff Blanco was employed by Defendants as a server at Bistro Café from approximately April 2022 until November 7, 2024. (Blanco Decl. ¶ 2; 2d Am. Compl. ¶ 5, ECF No. 27-1.)

Plaintiff seeks conditional certification of an FLSA collective action on behalf of all similarly situated tipped servers at Bistro Café who were required to share their tips with ineligible employees under Defendants' mandatory tip-out policy. The evidence demonstrates that Defendants enforced a uniform, company-wide policy requiring servers to pay specific minimum amounts to runners, bartenders, and baristas. Defendants monitored compliance through WhatsApp messages directing servers to make payments via Zelle and threatened to cancel shifts for noncompliance. (Blanco Decl. ¶¶ 5-8, Ex. 1; Maldonado Decl. ¶¶ 5-6; Vargas Decl. ¶ 8.) This common policy is

1

documented in the corroborating declarations of named Plaintiff Cristian Blanco (Blanco Decl.), opt-in plaintiff Ender Maldonado Perez (Maldonado Decl.; Notice of Consent to Join, ECF No. 29-1), and opt-in plaintiff Andres Vargas Hernandez (Vargas Decl.; Notice of Consent to Join, ECF No. 28-1), as well as the declaration of opt-in plaintiff Sergio Ardila Ortiz.

This motion concerns Plaintiff Blanco's FLSA claims under 29 U.S.C. § 203(m)(2)(B) and § 216(b) for unlawful tip violations, as well as overtime wage violations under 29 U.S.C. § 207. (2d Am. Compl. ¶¶ 2, 65-66, 85-86, ECF No. 27-1.) Under the lenient notice-stage standard applicable to conditional certification, Plaintiff has demonstrated that he and other servers were subject to a common unlawful tip-sharing policy and a common policy of uncompensated overtime that warrant conditional certification and court-facilitated notice.

## STATEMENT OF FACTS

### A. Defendants and FLSA Enterprise Coverage

Plaintiff Cristian Camilo Blanco Acosta, by and through undersigned counsel, respectfully moves this Court for an Order conditionally certifying a collective action pursuant to 29 U.S.C. § 216(b) and authorizing court-facilitated notice to similarly situated employees. Plaintiff Blanco was employed by Defendants as a server at Bistro Café from approximately April 2022 until November 7, 2024. (Blanco Decl. ¶ 2; 2d Am. Compl. ¶ 5, ECF No. 27-1.)

Plaintiff seeks conditional certification of an FLSA collective action on behalf of all similarly situated tipped servers at Bistro Café who were required to share their tips with ineligible employees under Defendants' mandatory tip-out policy. The evidence demonstrates that Defendants enforced a uniform, company-wide policy requiring servers to pay specific minimum amounts to runners, bartenders, and baristas. Defendants monitored compliance through WhatsApp messages directing servers to make payments via Zelle and threatened to cancel shifts for noncompliance.

2

(Blanco Decl. ¶¶ 5-8, Ex. 1; Maldonado Decl. ¶¶ 5-6; Vargas Decl. ¶ 8.) This common policy is documented in the corroborating declarations of named Plaintiff Cristian Blanco (Blanco Decl.), opt-in plaintiff Ender Maldonado Perez (Maldonado Decl.; Notice of Consent to Join, ECF No. 29-1), and opt-in plaintiff Andres Vargas Hernandez (Vargas Decl.; Notice of Consent to Join, ECF No. 28-1), as well as the declaration of opt-in plaintiff Sergio Ardila Ortiz.

This motion concerns Plaintiff Blanco's FLSA claims under 29 U.S.C. § 203(m)(2)(B) and § 216(b) for unlawful tip violations, as well as overtime wage violations under 29 U.S.C. § 207. (2d Am. Compl. ¶¶ 2, 65-66, 85-86, ECF No. 27-1.) Under the lenient notice-stage standard applicable to conditional certification, Plaintiff has demonstrated that he and other servers were subject to a common unlawful tip-sharing policy and a common policy of uncompensated overtime that warrant conditional certification and court-facilitated notice.

## B. Plaintiff Blanco's Employment

Plaintiff Cristian Camilo Blanco Acosta worked for JCRB Inc. d/b/a Bistro Café as a server from approximately April 2022 until November 7, 2024. (Blanco Decl. ¶ 2; 2d Am. Compl. ¶ 5, ECF No. 27-1.) As a server, Plaintiff Blanco regularly waited on customers, entered orders, delivered food and beverages, processed payments, and performed opening and closing duties. (Blanco Decl. ¶ 3; 2d Am. Compl. ¶ 54, ECF No. 27-1.)

During his employment, Defendants paid Plaintiff Blanco at a tipped hourly rate that was less than the full minimum wage and distributed his credit-card tips through payroll. (Blanco Decl. ¶ 4.) This compensation structure was corroborated by opt-in plaintiff Sergio Ardila Ortiz, who worked as a busser and food runner at Bistro Café from approximately March 2024 through November 2024, (2d Am. Compl. ¶ 7, ECF No. 27-1) and by Ender Maldonado Perez, who worked

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

as a food runner beginning around November 2023 and became a server around February or March 2024, continuing through approximately February 2025. (Maldonado Decl. ¶ 2.)

**C. The Common Unlawful Tip-Out Policy**

Defendants imposed a mandatory, uniform tip-out policy on all servers working at Bistro Café. This policy required servers to pay specified portions of their tips to runners, bartenders, baristas, and kitchen staff, including employees who do not customarily and regularly receive tips. (Blanco Decl. ¶ 5; 2d Am. Compl. ¶¶ 20, 66-68, ECF No. 27-1.) The policy operated through four key components: (1) mandatory payment amounts communicated by management, (2) enforcement through monitored Zelle transfers, (3) daily documentation on tip distribution sheets, and (4) retaliation through shift cancellations for noncompliance.

First, Defendants established and communicated specific mandatory payment amounts through the shared WhatsApp group "Bistro Café Miami." (Blanco Decl. ¶ 6.) On November 17, 2023, General Manager Cristina Paola posted to all servers: "El pago a los runners es NO MENOS DE DIEZ DÓLARES. EL PAGO AL BARTENDER ES QUINCE DÓLARES DÍAS DE SEMANA VEINTIDOS DÓLARES FINES DE SEMANA." (Blanco Decl., Ex. 1.) This translates to: runners receive no less than $10 per day, bartenders receive $15 on weekdays and $22 on weekends. Additionally, servers were required to pay baristas 5% of their total tips. (Maldonado Decl. ¶¶ 5-6.) On December 5, 2023, management announced that tip payments to runners and bartenders would be made "DIARIAMENTE, lo harán todas las tardes antes de cruzar la puerta de salida" — daily, before leaving each evening. (Blanco Decl., Ex. 1.)

4

Second, Defendants enforced these payments through mandatory Zelle transfers that management actively monitored. Managers posted the Zelle phone numbers and email addresses of runners, bartenders, and baristas in the group chat, instructing servers exactly where to send payments, and monitored whether the payments were made. (Blanco Decl. ¶ 6.) On March 22, 2024, supervisor Nicol Bistro sent a message to the server group reminding servers of their Zelle payment obligations and warning that "La falta de sus pagos hacia los runners o bartenders, se verán afectados como consecuencias hacia su horario de trabajo." (Translation: "The failure of your payments to the runners or bartenders will result in consequences to your work schedule.") (Blanco Decl. ¶ 7, Ex. 1.)

Third, Defendants documented the tip-out system on daily "PROPINA DIARIA" (daily tip) distribution sheets. These pre-printed forms included columns for each server's cash tips, credit card tips, total tips, and separate columns specifically designated for payments to "BARISTAS," "RUNNERS," and "BARTENDER." Servers completed these forms at the end of each shift, recording the amounts paid to each category of employee. The sheets corroborate the mandatory nature of the tip-outs and the specific amounts required.

Fourth, and critically, Defendants backed this policy with actual retaliation. When servers failed to comply with tip payment requirements, Defendants canceled their shifts and removed them from the work schedule. On January 25, 2024, after servers failed to pay runners on time, management sent an ultimatum giving servers 15 minutes to pay and warning: "La persona que no lo haga de esta manera tendrá todos sus próximos turnos cancelados. Si vuelve a pasar, estará fuera de el equipo." (Translation: "The person who does not \[pay\] will have all their upcoming

shifts canceled. If it happens again, they will be off the team.") That same day, supervisor Cristina Paola canceled server Luis Rivero's upcoming shifts for non-payment. (Blanco Decl. ¶ 8, Ex. 1.)

The mandatory and uniform nature of the tip-out policy is independently corroborated by each of the three declarants. Plaintiff Blanco personally observed that every server working with him was required to follow the same tip-out policy throughout his employment, that the policy remained substantially the same throughout his employment, and that management continued to require newly hired servers to participate in the same mandatory tip-out system. (Blanco Decl. ¶¶ 9, 11.) He further attests that he regularly worked alongside approximately ten to twelve other servers per shift, and that the weekly schedules distributed through the group WhatsApp chat listed as many as seventeen or eighteen servers on the roster at any given time — all of whom were subject to the same mandatory tip-out policy. (Blanco Decl. ¶ 10.) Ender Maldonado Perez uniquely corroborates the system from both sides: as a runner he regularly received mandatory tip-out payments from servers; after becoming a server he was required to make those same mandatory payments to runners, bartenders, baristas, and kitchen staff. He personally observed that the same tip-out policy applied to all servers working during his employment and that management expected every server to comply. (Maldonado Decl. ¶¶ 3-7.) Andres Vargas Hernandez, who worked as a bartender at Bistro Café from approximately November 2021 through June 2023, adds a fourth independent perspective: throughout his employment, although employees came and went, he continued to observe servers making mandatory tip-out payments to bartenders and other employees under the same restaurant-wide system. (Vargas Decl. ¶¶ 2, 8.)

Similarly, opt-in plaintiff Sergio Ardila Ortiz, who worked at Bistro Café from approximately March 2024 through November 2024, (2d Am. Compl. ¶ 7, ECF No. 27-1) has also joined this action and attests that he was subjected to the same mandatory tip-out policy as the other servers, and that management retaliated against his schedule when he failed to pay the full required amounts.

**D. Additional Common FLSA Violations**

Defendants subjected servers to additional common policies that corroborate the FLSA violations. Defendants required servers to perform off-the-clock work through a systematic "break-in" policy. When a server's scheduled shift ended but tables remained open, management directed servers to clock into an unpaid break while continuing to serve customers and wait for final payment. (Maldonado Decl. ¶ 9.) Servers would then complete service, perform checkout procedures with management, and immediately clock out, resulting in unpaid compensable time. Plaintiff Blanco personally observed management regularly require servers to continue serving customers, cleaning, completing side work, and closing out tables after they had clocked out or after their scheduled shifts had ended. (Blanco Decl. ¶ 14.) Andres Vargas independently observed management require employees to continue performing work after clocking out or after their scheduled shifts had ended, and that other bartenders and hourly employees, including servers, regularly worked more than forty hours per workweek without receiving all overtime compensation owed. (Vargas Decl. ¶¶ 6, 9-10.) Ender Maldonado similarly confirms that management required servers to continue working after clocking into unpaid breaks or after their scheduled shifts while waiting for customers to finish dining or while completing closing duties, and that he personally worked more than forty hours during certain workweeks without receiving all overtime compensation required by federal law. (Maldonado Decl. ¶¶ 9, 11-12.)

7

Additionally, Defendants engaged in systematic time-shaving by adjusting servers' punch times to predetermined clock-out times regardless of actual hours worked. Plaintiff Blanco personally observed management adjust employees' recorded work hours to reflect earlier clock-out times than employees actually worked. (Blanco Decl. ¶ 15.) Maldonado confirms that the same overtime practices remained in place throughout his employment, applied consistently to hourly employees across roles. (Maldonado Decl. ¶ 10.) These policies resulted in overtime wage violations affecting servers as well as bartenders.

## LEGAL STANDARD FOR CONDITIONAL CERTIFICATION UNDER 29 U.S.C. § 216(b)

Section 216(b) of the Fair Labor Standards Act authorizes collective actions by employees on behalf of themselves and others "similarly situated," with all plaintiffs required to affirmatively opt into the suit. 29 U.S.C. § 216(b); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). This collective action mechanism differs fundamentally from Rule 23 class actions because putative plaintiffs must file written consent with the court to become party plaintiffs and be bound by the outcome. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

The Eleventh Circuit has endorsed a two-stage approach to collective action certification. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (citing *Hipp*, 252 F.3d at 1217-19). At the first stage, the "notice stage," the district court makes a decision based on the pleadings and any affidavits whether notice should be given to potential class members. Because the court has minimal evidence at this stage, the determination is made using a fairly lenient standard and typically results in conditional certification of a representative class. *Hipp*, 252 F.3d at 1218. If conditionally certified, putative class members receive notice and the opportunity to opt in, and the action proceeds through discovery. Id. At the second stage, typically after discovery is complete,

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

the court conducts a more searching inquiry into whether claimants are similarly situated and may decertify the class if they are not. Id.

At the notice stage, plaintiffs need only make a "modest factual showing" that there are other employees who are similarly situated in terms of their job requirements and pay provisions. *Anderson*, 488 F.3d at 953. The standard is "not particularly stringent" and requires only allegations "supported by affidavits." *Morgan*, 551 F.3d at 1259. Employees are similarly situated for § 216(b) purposes when they were victims of the same unlawful decision, policy, or plan. A plaintiff need not show that all class members have identical claims, only that there is a common policy or practice that allegedly violates the FLSA.

Plaintiffs must also demonstrate a reasonable basis to believe that other similarly situated employees desire to opt in. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This can be shown through affidavits, declarations, or identification of potential opt-ins.

Courts have denied conditional certification where declarations were speculative or where substantial contrary evidence of voluntariness was presented. *See Kubiak v. S.W. Cowboy, Inc.*, 2014 U.S. Dist. LEXIS 80225, at *40-51 (M.D. Fla. June 12, 2014) (denying certification where plaintiffs relied on conclusory beliefs that others desired to join and defendants submitted 55 affidavits asserting voluntary participation). Here, by contrast, Plaintiff presents specific documentary evidence, including WhatsApp messages mandating payment amounts, Zelle transaction records documenting enforcement, daily tip distribution sheets with designated payment columns, and contemporaneous threats of schedule retaliation, establishing the mandatory nature of Defendants' tip-sharing policy.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

## ARGUMENT: THE PROPOSED COLLECTIVE
## SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff Blanco has satisfied the modest showing required for conditional certification at the notice stage. The Court's inquiry at this juncture is not to resolve factual disputes or weigh competing evidence, but only to assess whether Plaintiffs have demonstrated that (1) other servers were similarly situated because they were subject to the same unlawful FLSA policy; (2) a factual basis exists to support that common policy; and (3) other employees desire to opt in. Each element is established here.

## I. ALL SERVERS WERE SUBJECT TO THE SAME FLSA-VIOLATING TIP-OUT POLICY

Plaintiff Blanco and the proposed collective members are "similarly situated" because Defendants imposed a single, uniform, employer-mandated tip-sharing policy on every server at Bistro Café that violates the FLSA.

Throughout the relevant period, Defendants paid servers at a tipped hourly rate well below the full minimum wage. Plaintiff Blanco's ADP-generated pay stubs confirm this: every pay period reflects a separate line item for "Tipped hours" at rates ranging from $6.98 to $9.98 per hour. (Pay Stubs, Bates Blanco 1-137.) By compensating servers at this reduced rate, Defendants claimed the tip credit authorized by 29 U.S.C. § 203(m). (2d Am. Compl. ¶¶ 123, 133, 143, ECF No. 27-1.) Yet simultaneously, Defendants required servers to distribute fixed portions of their tips to kitchen staff, runners, bartenders, and baristas — employees who do not "customarily and regularly" receive tips under the FLSA. Under 29 U.S.C. § 203(m)(2)(B), an employer that takes a tip credit may not simultaneously require tipped employees to share tips with employees who do not customarily and regularly receive tips. An employer who does so loses the tip credit entirely and must pay affected employees the full minimum wage for all hours worked. (2d Am. Compl. ¶¶ 118-

10

122, ECF No. 27-1.) Plaintiff seeks collective certification of the tip-credit violation under § 203(m)(2)(B) and the overtime violation under § 207 — not a standalone minimum wage claim under § 206.

The amounts required by Defendants were fixed, mandatory, and communicated uniformly to all servers through the "Bistro Café Miami" WhatsApp group chat. Management's November 17, 2023 message to all servers is representative: runners were to receive "NO MENOS DE DIEZ DOLARES" (no less than $10) per day; bartenders were to receive $15 on weekdays and $22 on weekends; and baristas were to receive 5% of each server's total tips. (WhatsApp Messages, Bates Blanco 141-163.) The amounts were non-negotiable, and management was explicit that no reduction could occur without prior managerial authorization. (Id.) Compliance was mandatory before servers could leave at the end of each shift. On December 5, 2023, management announced that runners and bartenders were to be paid "DIARIAMENTE, lo haran todas las tardes antes de cruzar la puerta de salida" — daily, before crossing the exit door. (Id.)

This policy was applied uniformly to every server. Management communicated the tip-out requirements to all servers simultaneously through the group chat, posted the Zelle contact information of designated recipients, and monitored compliance with the payment transfers. (Blanco Decl. ¶¶ 6, 10.) When servers failed to comply, Defendants canceled their shifts. The January 25, 2024 ultimatum was explicit: servers had "15 minutos" to make all outstanding payments or face cancellation of all upcoming shifts, with a second offense resulting in termination. (WhatsApp Messages.) At least one server, Luis Rivero, had his shifts immediately canceled as a result, and another employee was removed from the team that same evening. (Blanco Decl. ¶ 8.)

Plaintiff Blanco's documented experience is confirmed by three independent declarants and a named opt-in plaintiff. Plaintiff Blanco attests from direct participation as a server for over two

11

years that every server working with him was required to follow the same tip-out policy, and that the policy was communicated and enforced uniformly through the group WhatsApp chat. He was himself called out by name in the group chat for compliance. (Blanco Decl. ¶¶ 9, 13.) Ender Maldonado independently corroborates the identical mandatory payment structure: management instructed servers on the required amounts and expected every server to comply, and the same policy applied to all servers working during his employment. (Maldonado Decl. ¶¶ 6-7.) Andres Vargas, who received mandatory tip payments from servers as a bartender, observed throughout his tenure that servers made mandatory tip-out payments under the same restaurant-wide system even as personnel changed over time. (Vargas Decl. ¶ 8.) Opt-in plaintiff Sergio Ardila further attests that management retaliated against his schedule when he failed to pay the full required amounts. (Ardila Aff.) Because every server was subjected to the same employer-directed policy through the same channels and under the same enforcement mechanisms, the "similarly situated" requirement is satisfied.

## II. SERVERS AND BARTENDERS WERE SUBJECT TO THE SAME OVERTIME VIOLATIONS

The proposed overtime collective members are similarly situated because Defendants imposed two uniform, restaurant-wide practices that systematically denied servers and other hourly employees their earned overtime compensation.

First, Defendants required hourly employees to continue performing compensable work off the clock through a mandatory "break-in" policy. When a server's scheduled shift ended but tables remained open, management directed servers to clock into an unpaid break while continuing to serve customers, wait for payment, perform checkout procedures with management, and complete closing duties. This practice was not incidental or occasional — it was a documented, management-directed policy communicated through the group WhatsApp chat on at least April

12

16, 2024, May 19, 2024, June 9, 2024, and October 3, 2024. (WhatsApp Messages.) Plaintiff Blanco personally observed management require servers to continue serving customers, cleaning, completing side work, and closing out tables after they had clocked out or after their scheduled shifts had ended. (Blanco Decl. ¶¶ 14-15.) Ender Maldonado independently confirms that management required servers to continue working after clocking into unpaid breaks or after their scheduled shifts, and that he personally worked more than forty hours during certain workweeks without receiving all required overtime compensation. (Maldonado Decl. ¶¶ 9, 11-12.) Andres Vargas, who observed these practices from the vantage point of a bartender, confirms that management required employees across roles to continue performing work after clocking out or after their scheduled shifts had ended, and that other bartenders and hourly employees regularly worked more than forty hours per workweek without receiving all overtime compensation owed. (Vargas Decl. ¶¶ 6, 9-10.)

Second, Defendants engaged in systematic time-shaving by adjusting hourly employees' recorded punch times to predetermined clock-out times regardless of actual hours worked. On October 8, 2022, General Manager Cristina Paola instructed that servers who had not finished their duties by 4:00-4:30 p.m. would have their time adjusted to the stipulated time anyway. (WhatsApp Messages.) On January 2, 2023, a manager confirmed that after the allotted time, minutes are reduced. (Id.) These adjustments reduced the compensable hours reflected in payroll records below actual hours worked, resulting in systematic underpayment of overtime to all affected hourly employees.

Both practices were communicated and enforced through the same management chain and the same WhatsApp group chat applicable to all servers and hourly staff. (Blanco Decl. ¶¶ 14-15; Maldonado Decl. ¶¶ 9-10; Vargas Decl. ¶¶ 9-10.) Because the off-the-clock and time-shaving

policies were uniform and restaurant-wide, all hourly employees subjected to them are similarly situated for purposes of the overtime claim.

## III. SUBSTANTIAL DOCUMENTARY EVIDENCE ESTABLISHES THE COMMON POLICY

The evidentiary record here is markedly stronger than cases where courts have denied certification. In *Kubiak v. S.W. Cowboy, Inc.*, 2014 U.S. Dist. LEXIS 80225, at *40-51 (M.D. Fla. June 12, 2014), the court denied certification where plaintiffs relied on speculative declarations that did not identify any potential opt-ins by name and where defendants submitted 55 contrary affidavits asserting voluntary participation. Here, by contrast, Plaintiff presents six independent categories of contemporaneous evidence, each corroborating the others.

First, the WhatsApp group chat records establish the mandatory tip-out policy in Defendants' own words. The messages were sent by management to all servers simultaneously, set specific non-negotiable payment amounts, established deadlines, and explicitly threatened schedule retaliation for noncompliance. There is nothing speculative about these communications. (WhatsApp Messages, Bates Blanco 141-660.)

Second, Zelle transaction records document actual mandatory transfers from servers to runners, bartenders, and baristas. These records confirm that Plaintiff Blanco and multiple other servers made regular Zelle payments to the same recipients throughout the relevant period in amounts consistent with the mandated minimums. In at least one documented instance, a server's account was blocked for exceeding the platform's 30-day payment limit to the same recipient — direct evidence of the volume and regularity of the required transfers. (Ocean Bank Zelle Screenshot, Bates Blanco 146.)

Third, Defendants' own business records — the "PROPINA DIARIA" (daily tip) distribution sheets produced as JCRB-0001 through JCRB-0312 — contain pre-printed columns

14

designated specifically for each server's daily distributions to baristas, runners, and bartenders, with supervisor signatures confirming managerial oversight of each day's payments. These company-maintained records are entirely inconsistent with voluntary tip sharing.

Fourth, pay stubs confirm that Defendants simultaneously claimed the tip credit and enforced the mandatory tip-out policy throughout the relevant period, establishing the precise combination that violates § 203(m)(2)(B). (Pay Stubs.) This documentary overlap aligns with the facts in *Celeski v. Tom Brown's Restaurant at Madison LLC*, 2025 U.S. Dist. LEXIS 190868 (N.D. Ala. Mar. 27, 2025), where the court certified a class on similar tip-pool facts supported by payroll records and employer-maintained documentation.

Fifth, weekly work schedules confirm that 8 to 12 servers per shift were subject to the same employment conditions, the same tip-out obligations, and the same enforcement mechanisms throughout the relevant period — providing an ascertainable and identifiable group of potential collective members. (Weekly Work Schedules.)

Sixth, the sworn declarations of Cristian Blanco, Ender Maldonado Perez, and Andres Vargas Hernandez provide four independent vantage points on the same uniform policy. Plaintiff Blanco attests from direct participation as a server spanning over two years, including being personally called out by name in the group chat for non-payment. (Blanco Decl. ¶ 13.) Maldonado attests to the same system from both sides — as a runner who received tip payments and as a server who was required to make them — and confirms that management expected every server to comply. (Maldonado Decl. ¶¶ 3-7.) Vargas attests to receiving mandatory tip payments as a bartender and to observing the same system continuously throughout his nearly two-year tenure, independent of any server's account. (Vargas Decl. ¶¶ 7-8.) The convergence of these

15

independently obtained declarations from witnesses across different job roles and spanning the full relevant period eliminates any reasonable inference that the tip-out arrangement was voluntary.

## IV. OTHER EMPLOYEES DESIRE TO OPT IN

Plaintiff has satisfied the requirement that there be a reasonable basis to believe other similarly situated employees desire to opt in to this action. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

The Second Amended Complaint identifies at least 50 similarly situated servers employed at Bistro Café during the relevant period. (2d Am. Compl. ¶ 70, ECF No. 27-1.) Most compellingly, two declarants have already taken the affirmative step of filing Notices of Consent to Join this action, confirming their desire to participate beyond their declarations: Andres Vargas Hernandez filed his Notice of Consent to Join at ECF No. 28-1, and Ender Maldonado Perez filed his Notice of Consent to Join at ECF No. 29-1. These filings are the clearest possible evidence that similarly situated employees desire to opt in.

Plaintiff Sergio Ardila Ortiz has also already joined this action as a named plaintiff after working as a runner and server at Bistro Café from February 2024 through November 7, 2024, and has confirmed in a sworn affidavit that he was subjected to the same mandatory tip-out policy as Plaintiff Blanco. (2d Am. Compl. ¶ 7, ECF No. 27-1; Ardila Aff.) Ender Maldonado Perez has provided a sworn declaration corroborating the common policy in detail and, based on his personal conversations with other Bistro Café employees, believes many of them would join this lawsuit if they received notice of it. (Maldonado Decl. ¶¶ 13-15.) Andres Vargas Hernandez has provided a sworn declaration corroborating the tip-out system and off-the-clock practices from his vantage point as a bartender. Based on his personal observations and conversations with coworkers during his employment, several employees expressed concerns about these pay practices, and he believes

16

many current and former Bistro Café employees would choose to join this lawsuit if they received Court-authorized notice. (Vargas Decl. ¶¶ 11-13.) Plaintiff Blanco himself attests that, based on personal conversations with numerous other servers — including Sergio Ardila Ortiz, Ender Maldonado Perez, Luis Rivero, and others — he believes many of those employees would be interested in joining this lawsuit if they received notice from the Court. (Blanco Decl. ¶¶ 16-18.)

Critically, Plaintiffs' Rule 26(a)(1) Disclosures identify dozens of current and former Bistro Café servers by name and contact information, including, among others, Angel, Andrey, Carlos, Cindy, Ender, Eva, Gretel, Guido, Juan, Joseilys, Krystel, Luis Rivero, Michell, Moises, Nicol, Paula, Pedro, Roberto, and Ruano. (Rule 26(a)(1) Disclosures.) The WhatsApp group chat, which spans from at least 2022 through 2024, identifies these same employees by name, documents their participation in the mandatory tip-out scheme, and confirms both the scale of the affected workforce and the identifiability of the potential opt-in plaintiffs. (WhatsApp Messages, Bates Blanco 141-660.)

Unlike the plaintiffs in *Kubiak*, who offered only vague speculation that unnamed individuals might wish to join, Plaintiffs here have identified specific potential opt-ins by name and verified contact information, secured one additional named plaintiff, obtained sworn declarations from three separately identified former employees across two different job roles spanning the full relevant period, and — critically — already have two of those declarants formally on the docket as opt-in plaintiffs at ECF Nos. 28-1 and 29-1. Conditional certification and court-facilitated notice are warranted.

## PROPOSED COLLECTIVE DEFINITION, NOTICE PROCEDURE, AND OPT-IN PERIOD

### A. Proposed Collective Definitions

Plaintiff respectfully proposes the following tip collective definition:

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

*All individuals who were employed by JCRB Inc. d/b/a Bistro Café as tipped servers at any time from December 9, 2022 through November 7, 2024, and who were required to distribute a portion of their tips to non-tipped or ineligible employees (including runners, bartenders, baristas, and/or kitchen staff) as a condition of their employment.*

This definition is supported by the factual record and captures the class of employees subject to Defendants' unlawful tip-sharing policy. (2d Am. Compl. ¶¶ 65-68, ECF No. 27-1.) The temporal scope reflects the three-year willful statute of limitations period calculated from the filing of the Complaint on December 9, 2025, extending back to December 9, 2022, and running through November 7, 2024, the last date Plaintiff Blanco was employed at Bistro Café. (Blanco Decl. ¶ 2.)

Additionally, Plaintiff respectfully proposes the following overtime collective definition:

*Overtime Collective: All individuals who were employed by JCRB Inc. d/b/a Bistro Café as hourly employees at any time from December 9, 2022 through the present, who worked more than forty hours in one or more workweeks, and who were not paid all overtime compensation required by 29 U.S.C. § 207 due to Defendants' policy of requiring off-the-clock work and/or adjusting employees' recorded punch times.*

This definition captures the class of hourly employees subjected to Defendants' uniform off-the-clock and time-shaving practices. (2d Am. Compl. ¶¶ 85-89, ECF No. 27-1.) It is broader than the tip collective in two respects: first, it extends beyond servers to all hourly employees, consistent with the declarations of Maldonado and Vargas, who observed these practices applied across roles (Maldonado Decl. ¶¶ 9-10; Vargas Decl. ¶¶ 9-10); and second, it extends through the present, as there is no evidence that the overtime practices ceased after November 7, 2024.

**B. Request for Production of Contact Information**

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

Plaintiff requests that the Court order Defendants to produce, within 14 days of entry of the Order granting conditional certification, the names, last known mailing addresses, last known email addresses, and telephone numbers of all individuals who fall within the proposed collective definitions. This information is necessary to effectuate notice to potential opt-in plaintiffs and should not await full discovery.

**C. Proposed Notice Procedure**

Plaintiff proposes to send the Court-approved Notice and Consent Form to all identified potential opt-in plaintiffs by first-class mail and email. Given that the Bistro Café workforce communicated primarily in Spanish, as evidenced by Spanish-language WhatsApp messages (Bates Blanco 141-660), company memoranda, disciplinary notices, and termination letters, Plaintiff requests that notice be provided in both English and Spanish to ensure all potential collective members can meaningfully understand their rights.

Plaintiff proposes a 60-day opt-in period from the date notice is mailed. To maximize participation, Plaintiff requests permission to send a reminder notice at the 30-day mark to all potential opt-ins who have not yet responded. Additionally, Plaintiff requests that the Court-approved notice be posted at both Bistro Café locations (1352 NE 1st Avenue, Miami and the Coral Gables location) in locations accessible to current employees, such as employee break areas or common workspaces.

**D. Tolling**

Plaintiff requests equitable tolling of the FLSA statute of limitations for potential opt-in plaintiffs from the date of filing this motion until the date the opt-in period closes. The statute of limitations runs individually for each opt-in plaintiff until their consent form is filed with the Court. Given that the Complaint was filed on December 9, 2025, and it is now May 14, 2026, more than

19

five months have passed. Tolling is necessary to preserve the claims of potential plaintiffs who have not yet received notice of this action and to prevent the loss of otherwise valid claims during the pendency of this motion and the notice process.

## CONCLUSION

Plaintiffs have satisfied the lenient notice-stage standard by demonstrating a common employer-enforced tip-out policy and common overtime practices applicable to all servers and hourly employees at Bistro Café. The evidence presented — WhatsApp messages mandating specific payment amounts (Bates Blanco 141-660), Zelle transaction records (Bates Blanco 146), daily tip distribution sheets (JCRB-0001 through JCRB-0312), pay stubs confirming simultaneous tip credit claims (Bates Blanco 1-137), and the sworn declarations of Plaintiff Blanco (Blanco Decl.), Ender Maldonado Perez (Maldonado Decl.; ECF No. 29-1), and Andres Vargas Hernandez (Vargas Decl.; ECF No. 28-1) — is more than sufficient to support conditional certification at this early stage. WHEREFORE, Plaintiffs respectfully request that the Court:

a. Conditionally certify the proposed FLSA collective action as defined herein;

b. Order Defendants to produce the names, last known mailing addresses, last known email addresses, and telephone numbers of all potential opt-in plaintiffs who fall within the collective definition within 14 days of the date of the Court's Order;

c. Approve Plaintiffs' proposed Notice and Consent to Join Form in English and Spanish;

d. Authorize a 60-day opt-in period and equitable tolling of the FLSA statute of limitations during the pendency of this motion and the notice period; and

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of May 2026,

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com

20

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiffs*